United States District Court
Southern District of Texas

**ENTERED**

March 22, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTERMOOR INC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-01392 |
| | § | |
| HARRY  WILSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Pending before the Court is the defendants', Franklin Offshore International Pte Ltd. ("FOI") and Franklin Offshore Mooring Pte Ltd ("FOM") (collectively, the "defendants"), motion to dismiss pursuant to 12(b)(2), 12(b)(4) of the Federal Rules of Civil Procedure, and the doctrine of forum non conveniens (Dkt. No. 53).  The plaintiff, InterMoor, Inc. (the "plaintiff"), has filed a response in opposition (Dkt. No. 58), to which the defendants have filed a reply in support of their motion (Dkt. No. 61).  Additionally, upon leave of the Court, the plaintiff filed a sur-reply (Dkt. No. 75).  After having carefully considered the motion, response, reply, sur-reply, and the applicable law, the Court determines that the defendants' motion to dismiss should be **DENIED**, as more fully explained below.

### II.    FACTUAL OVERVIEW AND PROCEDURAL BACKGROUND

The plaintiff, a global oilfield and marine services company, is a Delaware corporation with its principle place of business in Houston, Texas.  The plaintiff provides goods and services to energy and marine customers for the installation and recovery of subsea assets.   The defendants are foreign corporations and subsidiaries organized under the laws of Singapore with their principal place of business also located at 11 Pandan Road, Singapore 609259.   They are

direct competitors to the plaintiff.  Their co-defendant, Harry Wilson ("Wilson"), is a citizen of Louisiana.  Wilson, the plaintiff's former employee, served as the company's vice president from January 2005 to June 2014 based in its Louisiana office.

The plaintiff alleges that Wilson along with the defendants acted in concert to misappropriate "confidential, proprietary, and trade secret information" from its company server in Houston for financial gain.  Specifically, the plaintiff complains that as vice president overseeing the plaintiff's operations in Southeast Asia, Wilson was responsible for directing the work performed for one of its major customers, Murphy Sabah Oil Co., Ltd. ("Murphy").  The plaintiff and defendants both compete for various projects as subcontractors for Murphy, bidding and performing work for Murphy's operations in Malaysia.  Wilson was involved in assembling the plaintiff's confidential bids for all of it projects with Murphy.

The plaintiff further alleges that after losing key bids to the defendants, it commenced an investigation that revealed suspicious text message and email exchanges on company devices between Wilson and the executive director for the defendants, Ian Ong ("Ong").  The investigation unraveled a scheme to usurp the plaintiff's contract opportunities with Murphy.  Specifically, Ong "offered Wilson a consultancy position with [the defendants], contingent upon [the defendants] winning the D246 long-term contract with Murphy []."  The offer included a monthly retainer fee for the duration of the contract, a share of the profits from the contract, and a $75,000.00 signing bonus.  Additional email correspondences between Wilson and Ong revealed invoices exchanged indicating that the defendants paid Wilson for his "consultancy" services.  Because of this agreement, the plaintiff claims that, to its detriment, the defendants benefited from its confidential, proprietary, and trade secret information provided by Wilson to aid the defendants in the winning a long term contract with Murphy.

On May 19, 2014, the plaintiff filed suit against Wilson in this Court.  On August 21, 2014, Wilson appeared and conceded to the Court's jurisdiction over him.  On February 27, 2015, the defendants were added as parties to this suit.  The plaintiff's second amended complaint alleges the following causes of action: (1) tortious interference with prospective relations; (2) conversion; (3) violation of the Texas Theft Liability Act; (4) misappropriation of trade secrets and liability under the Texas Uniform Trade Secrets Act and common law misappropriation; (5) conspiracy to tortiously interfere with prospective relations; (6) conspiracy to breach fiduciary duty; and (7) conspiracy to misappropriate trade secrets and liability under the Texas Uniform Trade Secrets Act and common law misappropriation; (8) breach of fiduciary duty; and (9) unjust enrichment.

The plaintiff retained a private process server who, on May 18, 2015, effected personal service on the defendants by leaving separate copies of the summons and second amended complaint for each defendant with the defendants' receptionist.  The defendants' receptionist acknowledged receipt by affixing the defendants' company stamp as well as her signature, date, and time to the front page of the return.  On June 8, 2015, the defendants filed the pending motion to dismiss challenging the Court's jurisdiction over them.  The plaintiff asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## III.    STANDARD AND APPLICABLE LAW

### A.    Standard Under Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) authorizes a motion to dismiss based on the defense that a court lacks jurisdiction over the defendant.  *See* FED R. CIV. P. 12(b)(2).  On such a motion, the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant.  *See Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990).  Where a court rules on such a motion

without a hearing, however, the court must accept, as true, all uncontroverted allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' affidavits in the plaintiff's favor.  *Id.* at 217.  Thus, absent a hearing, the plaintiff need only establish a *prima facie case* for personal jurisdiction.  *Id.*  Nevertheless, after the plaintiff establishes its *prima facie* case, the burden then shifts to the non-resident defendant to demonstrate a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Generally, in a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if two conditions are met:  (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment of the United States Constitution.  *Revell*, 317 F.3d at 469.  This Court, however, need only consider whether the exercise of jurisdiction over the non-resident defendant comports with due process "because the Texas Supreme Court has [long] established that the Texas long-arm statute . . . 'reaches as far as the federal constitutional requirements of due process will permit.'"  *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989) (quoting *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex. 1985)); *accord Revell*, 317 F.3d at 469-70.

"The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over [the] defendant does not offend 'traditional notions of fair play and substantial justice.'"  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)); *accord*

*Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).  Both portions of this test must be satisfied before the Court can exercise personal jurisdiction over the defendants.  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

There are two categories of personal jurisdiction: specific jurisdiction and general jurisdiction.  *Daimler*, 134 S. Ct. at 754; *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).  Specific jurisdiction over a non-resident defendant arises when the non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."  *Alpine View*, 205 F.3d at 215 (quoting *Burger King*, 471 U.S. at 472) (internal quotation marks omitted).  General jurisdiction, on the other hand, arises when the defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Daimler*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Monkton*, 768 F.3d at 432.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home"—typically, "the place of incorporation and principal place of business."  *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853-54); *Monkton*, 768 F.3d at 432.  A corporation is *not* "at home" in "every state in which it 'engages in a substantial, continuous, and systematic course of business.'"  *Daimler*, 134 S. Ct. at 760-61.  "Otherwise, 'at home' would be synonymous with 'doing business' tests" implicating the exercise of specific jurisdiction.  *Id.* at 762 n.20.  The test for determining general jurisdiction over a foreign

corporation is "whether that corporation's affiliations with the [forum] State are so 'continuous and systematic' as to render [it] essentially at home in the . . . State." *Id.* at 761. In other words, the test is "not [simply] whether [the] corporation's in-forum contacts can be said to be in some sense 'continuous and systematic.'" *Id.* It is the exceptional case that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). Based on these principles, the Fifth Circuit has observed that "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton*, 768 F.3d at 432.

### B.    Standard Under Fed. R. Civ. P. 12(b)(4)

Rule 12(b)(4) allows a defendant to attack the form of the process, rather than the method by which it is served. *See* Fed. R. Civ. P. 12(b)(4). Problems of form arise, for example, where the party to be served is improperly named. *Marine Geotechnics, LLC v. Williams*, 2009 WL 2144278, at *2 (S.D. Tex. July 13, 2009); *Margetis v. Ray*, 2009 WL 464962, at *4 (N.D. Tex. Feb. 25, 2009) ("Process may be insufficient if the summons and complaint refer to a party in the wrong name."). Rule 12(b)(5), in contrast, "permits a challenge to the method of service attempted by the plaintiff, or the lack of delivery of the summons and complaint." *See Neely v. Khurana*, 2008 WL 938904, at *2 (N.D. Tex. Apr. 7, 2008); Fed. R. Civ. P. 12(b)(5). A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of

summons must be satisfied."). "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *See Aetna Business Credit Inc. v. Universal Decor and Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981); *Nabulsi v. Nahyan*, 2009 WL 1658017, at *4 (S.D. Tex. June 12, 2009) (citing *Aetna*).

## IV.    CONTENTIONS OF THE PARTIES

### A.    The Defendants' Contentions

The defendants contend that personal jurisdiction is lacking because neither is "essentially at home" in Texas or engaged in suit-related conduct creating a substantial connection with Texas.   In addition, the defendants aver that dismissal under forum non conveniens is warranted because Singapore is an adequate and available alternative forum and public and private interest weigh in favor of the suit being litigated in Singapore given that they are Singapore corporations.   Lastly, the defendants allege that the plaintiff failed to properly serve the defendants in accordance with the federal rules and Singapore law.

### B.    The Plaintiff's Contentions

In response, the plaintiff argues that the defendants' activity established sufficient minimum contacts with Texas implicating the exercise of both general and specific jurisdiction over them.   In addition, the plaintiff argues that dismissal under forum non conveniens is not appropriate because in light of efficiency and judicial economy, Texas courts have a substantial interest in this dispute.   The plaintiff further argues that the defendants have been properly served in accordance with the Federal Rules of Civil Procedure.   Alternatively, the plaintiff prays for leave of the Court to conduct jurisdictional discovery before ruling on this motion to dismiss.

## V.      ANALYSIS & DISCUSSION

### A.      Personal Jurisdiction Over the Defendants

The Court holds that personal jurisdiction exist over the defendants.  The Court finds that the exercise of specific jurisdiction has been implicated here.[1]  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."  *Monkton*, 768 F.3d at 432-33 (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014)).  Here, the plaintiff's suit against the defendants is based on their alleged involvement in the plan to scheme the plaintiff out of contracts with Murphy.   Specifically, the plaintiff asserts that Wilson misappropriated confidential, proprietary, and trade secret information from the plaintiff's server in Houston and forwarded it to Ong for the financial gain of the defendants.   The defendants respond that they have not directed any suit-related conduct towards Texas because Wilson worked in the plaintiff's Louisiana office and any interaction with Wilson occurred in Louisiana or abroad.  This rebuttal is directly controverted by the plaintiff's exhibit to its response of an email exchange between Ong and Eddie Ewe dated May 7, 2014, stating the following:

Eddie,

Be at my apartment (address below) by 9am tomorrow morning.

[Wilson] will pick us up and bring us to Don's office.

Regards,
Ian Ong
 . . .

Lafayette West Apartments
11601 Katy Fwy, Ste 100
Houston, Texas 77079
281.497.8977

---

[1] The Court finds that general jurisdiction is lacking.  The defendants are Singapore corporations with their principle place of business in Singapore.  Therefore, for general jurisdiction purposes, the defendants are "at home" in Singapore.  *Monkton*, 768 F.3d at 432 (citing *Daimler*, 134 S. Ct. at 760).

info@lafayettewest.com

This evidence suggests, at the very least, that Ong engaged in some activity with Wilson in Houston.[2]  The nature of this dispute centers around Ong and Wilson's activity and the email suggests that some of this activity occurred in Texas.  The Court acknowledges that a fact question remains regarding the extent of Ong's activities with Wilson in Houston.  However, the Court is charged to resolve factual conflicts in favor of the plaintiff.  Thus, taking the plaintiff's allegations as true, they demonstrate that the defendants purposefully directed suit-related activity at the forum state and that the plaintiff's alleged injuries arose, in part, out of the defendants' activities in Texas; thus, establishing minimum contacts with Texas.

Furthermore, the Court finds that the plaintiff's suit against the defendants do not offend traditional notions of fair play and substantial justice.  "In assessing fair play, courts balance (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiffs' interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies."  *Burger King*, 471 U.S. at 466-67.

Taking the plaintiff's allegations as true, it was foreseeable that a civil action would be brought in Texas given the origin of the alleged misappropriation.  The alleged misappropriated information came from the plaintiff corporation, which has its principle place of business in Houston.   Wilson, who forwarded the information to the defendants, was an employee for the plaintiff during all relevant periods of the alleged misappropriation.  The alleged misappropriated information came from the plaintiff's server in Houston.  And, as the Court has recognized,

---

[2] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("[d]ocuments that a [party] attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (citation omitted).

Ong's email exchange indicates that Wilson and Ong had face-to-face interaction in Houston. Thus, the defendants could reasonably expect to be hauled into a Texas court.

It is true that the defendants may be burdened if subjected to jurisdiction in Texas. However, the law is clear that when minimum contacts is established in the forum state, the burden that is placed on a party is justified. *See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

The burden now shifts to the defendants to demonstrate a compelling case that the presence of some other consideration would render jurisdiction unreasonable. *See Monkton*, 768 F.3d at 433; *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  In an attempt to demonstrate unreasonableness, the defendants claim that "[i]t would be a substantial and unreasonable burden on [the defendants] to be required to defend this suit in Texas."  The defendants further urge that "[t]hey are not at home in Texas and did not engage in suit-related conduct creating a substantial connection with Texas."  While the defendants are not at home in Texas, the Court has nonetheless held that the defendants, in fact, engaged in suit-related activity establishing minimum contacts with Texas.

Moreover, the defendants argue that jurisdiction is unreasonable because "[the plaintiff's] allegations against [the defendants] relate to conduct that allegedly took place in Singapore to obtain contracts to work in Malaysia for a Malaysian corporation pursuant to contracts governed by Malaysian law."   The Court disagrees.  First, the defendants' alleged conduct did not solely take place in Singapore.  The plaintiff alleges that Wilson and the defendants misappropriated

confidential, proprietary, and trade secret information, which came from its company server in the Houston headquarter office.  Second, the fact that the contracts are governed by Malaysian law is irrelevant to the jurisdictional analysis.  This suit is centered on alleged conduct arising in tort, not contract law.  Thus, the Court finds the defendants arguments to be unavailing.  Accordingly, personal jurisdiction over the defendants is not unreasonable.

###    B.    Forum Non Conveniens

The equitable doctrine of forum non conveniens enables a district court, at its discretion, to decline to exercise jurisdiction "if the moving party establishes that the convenience of the parties and the court and the interests of justice indicate that the case should be tried in another forum."  *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).  When deciding a forum non conveniens issue, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."  *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S. Ct. 828, 91 L. Ed. 1067 (1947).  A district court should first consider whether an available and adequate alternative forum exists.  *Karim*, 265 F.3d at 268 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 255, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)).  A district court generally considers the following factors: "(1) amenability of the defendant to service of process and (2) availability of an adequate remedy in the alternative forum."  *Id.*; *see also Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379–80 (5th Cir. 2002), cert. denied, 538 U.S. 1012, 123 S. Ct. 1928, 155 L. Ed. 2d 848 (2003); *McLennan v. Am. Eurocopter Corp.,* 245 F.3d 403, 424 (5th Cir. 2001).  If an available and adequate alternative forum exists, the court then determines which forum is best suited to the litigation. *Id.*

Second, a court must consider which private and public interest factors weigh in favor of dismissal.  *Id.* at 268–69.  The private interest factors to be considered by the Court relate

primarily to the convenience of the litigants.  They are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986) (citing *Piper Aircraft*, 454 U.S. at 241).  The public interest factors relevant to the analysis are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 214 (5th Cir. 2010) (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1162–63 (5th Cir. 1987) (en banc)).

In the instant action, the Court finds that a forum non conveniens dismissal is inappropriate because while Singapore may arguably be an adequate forum, it is not an available forum.  A foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum.  *Syndicate 420*, 796 F.2d at 830.  Assuming *arguendo* that this case is litigated in Singapore, all issues presented would still concern the confidential, proprietary, and trade secret information obtain from a corporation with its principle place of business in Texas. It is also noteworthy that Wilson has conceded to the jurisdiction of this Court.  As such, the entire case would not be available in Singapore because, as it stands, Wilson, as a co-defendant is not subject to jurisdiction of a Singapore court, which would render the plaintiff's civil conspiracy claims futile.[3]  Besides, a plaintiff's choice of forum is entitled to deference, with an

---

[3] The elements of the plaintiff's civil conspiracy claim are as follows: (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplished an unlawful purpose or

even higher degree of deference when it has chosen its home forum.[4] *Piper Aircraft*, 454 U.S. at 255-56. Accordingly, the Court concludes that Singapore is not an available forum for this suit. Therefore, the Court need not address the remaining factors of the forum non conveniens framework.

### C.    Service of Process on the Defendants

It appears that while the defendants have urged this motion under 12(b)(4), their argument is fashioned towards a 12(b)(5) motion. The defendants' argument pertains to the method by which they were served, not the form of the process. Despite this deficiency, the Court nonetheless finds that the defendants' argument is without merit.

The defendants argue that dismissal is proper because "[u]nder Singapore law, a plaintiff properly serves a defendant by presenting the defendant with a writ issued by a Singapore court[.]" The plaintiff failed to present a writ in this case. It also appears that the defendants, by way of their reply, have abandoned this argument after the plaintiff response noted that serving each defendant with the summons and a copy of the amended complaint at its corporate location by a private process server comported with the federal rules and Singapore law.

Because this case involves service of process on a defendant corporations located in a foreign country, the plaintiff is required to comply with Rule 4(f) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 4(h)(2). In accordance with Rule 4(f), absent a waiver, service on a foreign corporation may be effected by any of the following:

---

a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). A business entity may conspire with an individual. *See, e.g.*, *Berry v. Golden Light Coffee Co.*, 327 S.W.2d 436, 440 (1959) (company conspired with truck driver to evade motor-carrier law). Given that the conspiracy claim requires two or more persons, the claim would be frustrated if the Court dismisses the defendants from this suit on forum non conveniens grounds, leaving Wilson as the sole defendant.

[4] Texas is the plaintiff's home forum because Texas is where its principle place of business is established. Therefore, the plaintiff is "at home" in Texas.

**(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

**(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

> **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or

> **(C)** unless prohibited by the foreign country's law, by:

>> **(i)** delivering a copy of the summons and of the complaint to the individual personally; or

>> **(ii)** using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

**(3)** by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4.

Singapore is not a signatory of the Hague Convention so Singapore law controls here. According to Singapore's Order 65, Rule 2 entitled, "service of foreign legal process pursuant to letter of request,":

> (1) This Rule applies in relation to the service of any process required in connection with civil proceedings pending before a court or other tribunal of a foreign country where a letter of request from such a tribunal requesting service on a person in Singapore of any such process sent with the letter is received by the Minister and is sent by him to the Supreme Court with an intimation that it is desirable that effect should be given to the request. (2) In order that service of the process may be effected in accordance with this Rule, the letter of request must be accompanied by a translation thereof in English, 2 copies of the process to be

served and 2 copies of the translation of the process in English. (3) . . . Service shall be effected by the process server.

Further, rule 2A of Order 65 entitled, "[a]lternative mode of service of foreign legal process," states:

> (1) Subject to Rule 3, this Rule applies in relation to the service of any process required in connection with civil proceedings pending before a court or other tribunal of a foreign country where Rule 2 does not apply or is not invoked. (2) Service of any such process within Singapore may be effected by a method of service authorised [sic] by these Rules for the service of analogous process issued by the Court.

Here, the plaintiff's process server effected personal service on the defendants by leaving a copy of the summons and second amended complaint for each defendant with the defendants' receptionist. The defendants' receptionist acknowledged receipt by affixing the defendants' corporate stamp as well as her signature, date, and time to the return. Accordingly, this method of service was reasonably calculated to give the defendants notice of the suit against them; thus, the service of process was within the confines of the federal rules and Singapore law. Therefore, the Court denies the defendants' motion to dismiss for insufficient process.

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motion to dismiss is **DENIED**.

It is so **ORDERED**.

SIGNED on this 22nd day of March, 2016.

_____
Kenneth M. Hoyt
United States District Judge